{¶ 37} I concur with the majority decision on all three assignments of error. On the first assignment of error, I write separately to specifically address issues raised concerning the "standard of care" and "hindsight" instructions given by the trial court.
 {¶ 38} With respect to "standard of care" and "hindsight," the trial court charged the jury as follows:
"Next, in determining whether the physician was negligent, you shouldconsider his care in light of all the attendant circumstances on the dateand at the time of the alleged negligent event. You should not judge thephysician by after-acquired knowledge or research.
 "By after acquired, the attorneys may want to help here when we take abreak, to clarify that so that the jury is not thrown off. So I may — Imay add something to that and we'll put that aside.
 "The test of the existence of medical negligence is not hindsight, butone of foresight, considering all of the then-known facts and with thestate of medical knowledge at the time the caregivers [sic] acted."
 {¶ 39} Appellant asserts this instruction was defective because the "after acquired knowledge" clause was not supported by the evidence and the "hindsight" portion of the instruction inadequately expressed the law and was ambiguous, misleading, and confusing. I disagree.
 {¶ 40} Although appellant makes a compelling argument that a trial court should not have given an instruction that the evidence does not support, appellant's reliance on Pesek v. University Neurologists,
87 Ohio St.3d 495, 2000-Ohio-483, is misplaced. The legal issue in this case is distinguishable. In Pesek, the court addressed the instruction of "alternative methods of treatment"; here, the court accurately addressed whether a physician's negligence should not be judged by "after acquired knowledge or research." There is a clear distinction between these principles.
 {¶ 41} Further, even as here, where the record does not indicate that an "after acquired knowledge or research" clause was necessary, it cannot be said that the instruction was inherently prejudicial. The facts of the case presented to the jury clearly defined the alleged errors of the treating physicians. These alleged errors were framed in the context of a treatment "timeline" and made it clear when the purported negligence occurred. The jury, for whatever reason, declined to find the physicians negligent.
 {¶ 42} In addition, the assertion that the jury could have improperly considered the autopsy report as applying to the standard of care, when it was offered for proximate cause, is speculative at best. As noted in the majority decision, appellant, although initially objecting, subsequently waived any error in the instruction as given. Further, this assignment does not rise to level of plain error. Reichart v. Ingersoll
(1985), 18 Ohio St.3d 220.
 {¶ 43} It is also important to address appellant's reliance on the instruction given in Moore v. Alliance Obstetrics, Inc., Stark App. No. 2001 CA 00006, 2002-Ohio-1138, in comparison to the "hindsight" instruction given here. In Moore, the trial court gave the following instruction:
"When examining the conduct of the defendant, with respect to thestandard of care, the conduct of care should be judged prospectively,looking forward in time. The care and conduct of the defendant must bejudged in light of the circumstances apparent to him at the time, and notby looking backward retrospectively `with the wisdom born of the event'.[sic] The standard is one of conduct, and not of consequence."
Id.
 {¶ 44} This instruction is distinguishable from the instruction given in the present case where the trial court clearly remarked "you should consider his care in light of all the attendant circumstances on the date and at the time of the alleged negligent event * * *." As the majority noted, this is an accurate statement of the law.
 {¶ 45} Lastly, appellant fails to support the assertion that the "hindsight" instruction was erroneous. "Actionable negligence does not consist of failing to take extraordinary measures which hindsight demonstrates would have been helpful." Bender v. First Church of theNazarene (1989), 59 Ohio App.3d 68, 69, quoting 70 O.Jur.3d (1986), Negligence, Section 9, at 46-47 (footnotes omitted).
 {¶ 46} "A hindsight charge instructs the jury on the distinction between foresight and hindsight, the former of which is the basis for a negligence claim. It instructs the jury that an after-the-fact assessment of facts or evidence cannot be the basis of a negligence claim so long as the initial assessment was made in accordance with the reasonable standards of medical care. In a medical malpractice case, a hindsight charge is authorized where the evidence raises an issue as to whether the negligence claim is based on later acquired knowledge or information not known or reasonably available to the defendant physician at the time the medical care was rendered." Mercker v. Abend, 260 Ga.App. 836, 839
(internal quotes and citations omitted).
 {¶ 47} The court in Mercker noted that the claims there were, like here, not based on "after acquired knowledge"; nevertheless, the court noted:
"In her appellate brief, Mercker argues that [her] claims against[Abend] were not based upon later acquired knowledge or information notknown or reasonably available. But jury charges are not limited to aplaintiff's characterization of the lawsuit. A trial court has a duty tocharge the jury on the law applicable to issues which are supported bythe evidence. If there is even slight evidence on a specific issue, it isnot error for the court to charge the jury on the law related to thatissue."
Id. (Internal quote and citation omitted.)
 {¶ 48} In this case, appellant presented evidence asserting that the treating physicians were negligent in failing to diagnose that Mrs. Messner had marked atherosclerotic disease or in failing to properly treat or notify her of the condition. The autopsy report was clearly used to establish the proximate cause of death; however, to suggest it has no relationship to an evaluation of the "standard of care" is unrealistic. In order to establish that there was negligence in this case, one would have to show that the death was caused by a condition related to the standard of care.
The autopsy results are therefore relevant to the assertion by the defense that the standard of care was not breached.
 {¶ 49} This appeal is predicated on questions of law and not on the factual findings of the jury. I am cognizant that appellant presented evidence that the test results were improperly read or improperly communicated to both Dr. Blankfield and Mrs. Messner personally. Further, evidence was presented that Dr. Blankfield failed to take proper action when made aware that the results were not normal. Nevertheless, the jury chose to reject this view.
 {¶ 50} As the majority has noted, the trial court's instructions were not erroneous, and on that basis I would affirm the decision of the trial court as to the first assignment of error.